USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/8/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――
TARSHA LYONS,

                        Plaintiff,

   -against-

CITI TRENDS, INC.,

                        Defendant.
―――――――――――――――――――――――――――

21-cv-08365 (NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

Plaintiff Tarsha Lyons ("Plaintiff") brings this action against Citi Trends, Inc. ("Citi Trends" or "Defendant"), asserting a claim of racial discrimination in violation of 42 U.S.C. 1981 ("Section 1981") and New York State Executive Law ("NYSHRL"), Article 15 Section 296. (*See* ECF No. 14 ("Am. Compl.").) Presently, before the Court is Defendant's motion to dismiss the Amended Complaint. (ECF No. 17.) For the following reasons, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts as taken from Plaintiff's Amended Complaint are accepted as true and construed in the light most favorable to Plaintiff for purposes of this motion.

Plaintiff is an African American woman who sought patronage of Defendant's retail location in Middletown, New York on October 8, 2020. (Am. Compl. ¶¶ 5, 7). Plaintiff alleges that she was denied service by an employee solely on the basis of her race. (*Id.* ¶ 16). Defendant's employee insisted on taking Plaintiff's bags upon her entrance to the store, despite the employee's acknowledgement to the Plaintiff that there was no bag check policy in place. (*Id.* ¶¶ 8–9). When Plaintiff refused to surrender her bag, the employee stated aloud — "I don't want your kind

shopping here" and "[i]f you don't give me your bags, you are not shopping here." (*Id.* ¶ 15.) Plaintiff filed a racial discrimination complaint with the Middletown Police Department the same evening as well as an online complaint with Citi Trends describing the incident. (*Id.* ¶¶ 19–20).

The next morning, Plaintiff spoke with an individual from Citi Trends by the name of "Tony Dargan" (hereinafter "Mr. Dargan"). (*Id.* ¶ 21). Mr. Dargan confirmed Plaintiff's account of the incident through video footage from the store. (*Id.* ¶ 22). At the time of the alleged incident, Plaintiff recalls seeing another shopper in the store who was not African-American carrying a bag in the store, and further recalls not seeing a person of color in the store during the time which she was present. (*Id.* ¶¶ 27–28). Plaintiff alleges that the imposed bag check and the employee's statements were solely because of her race, and that but-for her race, she would have been permitted to shop at Defendant's store on the day in question. (*Id.* ¶¶ 30–31).

Plaintiff initiated this action on October 11, 2021. (ECF No. 1). Defendant filed a motion to dismiss the amended complaint on February 2, 2022. (ECF No. 14.)

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or

"[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff's Amended Complaint alleges she was denied service by Defendant's Middletown, New York location because of her race in violation of Section 1981 and the NYSHRL. The Court will examine each claim below. For the reasons discussed below, Defendant's motion to dismiss is denied as to the Section 1981 claim and granted as to the NYSHRL claim.

I. **Section 1981**

Section 1981 provides, in relevant part:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 410 (S.D.N.Y. 2014) (quoting *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004)).

To establish a claim under Section 1981, a plaintiff must allege: (1) that he or she is a member of a protected class; (2) the defendant's intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities. *Brown v. City of Oneonta*,

221 F.3d 329, 339 (2d Cir. 1999). In addition, "a plaintiff must . . . prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

A claim of discrimination under Section 1981 requires a showing of intentional discrimination. *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982). Therefore, at the pleading stage, a plaintiff must "specifically allege the 'circumstances giving rise to a plausible inference of racially discriminatory intent.'" *Wade v. Kay Jewelers, Inc.*, No. 3:17-cv-990 (MPS), 2018 WL 4440532, at *7 (D. Conn. Sept. 17, 2018) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)). On the facts alleged, the Court concludes that Plaintiff has met her burden to plead that, but for her race, she would not have suffered the loss of a legally protected right.

On the first prong, it is undisputed that Plaintiff is a member of a protected class under Section 1981.

Regarding the second prong, at the pleading stage, a plaintiff must "specifically allege the 'circumstances giving rise to a plausible inference of racially discriminatory intent.'" *Wade v. Kay Jewelers, Inc.*, No. 3:17-cv-990 (MPS), 2018 WL 4440532, at *7 (D. Conn. Sept. 17, 2018) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)). The Court must presume it to be true, as alleged, that the employee in question made the statement "I don't want your kind shopping here." (Am. Compl. ¶ 15). Absent an indication that such "kind" may reference other damaging facts concerning a person's character, the locution "your kind" may reasonably be inferred under such context to refer to a person's race. *See Creacy v. BCBG Max Azria Grp., LLC,* No. 14-CV-10008 (ER), 2017 U.S. Dist. LEXIS 49523 (S.D.N.Y.) (stating that phrases such as "you people" or "your kind" can be reasonably inferred by a jury to have a racial meaning); *Winston v. Verizon*

4

*Servs. Corp.,* 633 F. Supp. 2d 24, 53 (S.D.N.Y. 2009) (use of the phrase "you people" implicates a question of state of mind and intent that is best left to a jury); *Wooten v. Reconstruction Home, Inc.,* No. 02-CV-01278 (NPM), 2005 WL 1502149 (N.D.N.Y. June 24, 2005) (resolving "you people" in combination with the evidence provided that discriminatory treatment began after defendant discovered plaintiff was African-American could begin to provide a basis for drawing a reasonable inference of discrimination). Accepting Plaintiff's allegations of employee's statements as true, and directed at the race of the Plaintiff as plead, the second prong of intent is fulfilled.

In order to satisfy the third prong, Plaintiff is required to allege that she was "actually prevented (rather than delayed) from completing a transaction, *or* at least forced to complete the transaction on different terms from non-minority customers." *Alexander v. JP Morgan Chase Bank, N.A.*, No. 19-CV-10811 (OTW), 2021 WL 1061833, at *4 (S.D.N.Y. Mar. 18, 2021) (emphasis added); *see e.g.*, *Joseph v. New York Yankees P'ship*, No. 00 Civ. 2275 (SHS), 2000 WL 1559019, at *3 (S.D.N.Y. Oct. 19, 2000) ("Assuming [the plaintiff's] allegations are true and that she was required to fulfill an additional condition that non-minority customers were not before she could contract for dining services, she would be limited in her right to contract as she could not enjoy 'all benefits, privileges, terms, and conditions of the contractual relationship' to the same extent as non-minority customers." (citing 42 U.S.C. § 1981)); *see also*, *Henry v. Lucky Strike Ent., LLC,* No. 10-CV-03682 RRM MDG, 2013 WL 4710488 (E.D.N.Y. Sept. 1, 2013) ("Outright refusals to serve willing customers based on their race, as well as placement of additional conditions on minority customers before serving them, constitute violations of [Section] 1981 because those actions prevent minority customers from making contracts on the same terms as whites.").[1]

---

[1] Section 1981 applies in the retail context where the alleged discrimination occurs prior to the conclusion of the transaction. *See Taylor v. Enter. Holding Grp., LLC*, No. 20-CV-6793 (LLS), 2020 WL 5634266 (S.D.N.Y. Sept.

Here, Plaintiff argues that Defendant imposed additional terms on her ability to enter or complete a transaction that would not have been imposed but-for her race. (ECF No. 18 ("Def. Br.") at 6). Plaintiff alleges that her ability to shop in the store was conditioned upon her surrendering her bag to an employee of Defendant. Plaintiff states that she was told her bags must be held by Defendant's employee for her to shop in the store (akin to a coat check), and that Plaintiff recalls seeing at least one other shopper who was not African-American carrying a bag and shopping in the store. (Am. Compl. ¶¶ 8, 14, 27, 29, 30) *See, c.f., Alexander*, 2021 WL 1061833, at *4 ("Here, Plaintiff alleges a twenty-minute delay and being asked to provide identification, but does not allege that he was ultimately prevented from withdrawing funds at the Stratford branch or forced to do so on terms only imposed on minority customers"). Imposition of such a condition upon the Plaintiff—*i.e.*, forcing her to complete her transaction on different terms than other white shoppers because of her race—would constitute a violation of Section 1981. *Henry,* 2013 WL 4710488 at *7. "Where additional conditions are placed on minorities entering the contractual relationship, those minorities have been denied the right to contract on the same terms and conditions as is enjoyed by white citizens." *Joseph*, 2000 WL 1559019, at *11–12 (S.D.N.Y. Oct. 19, 2000). With all reasonable inferences drawn in favor of the Plaintiff, and all allegations in the Amended Complaint presumed true, Plaintiff has met the pleading standard of the third prong.

Accordingly, Defendant's motion to dismiss Plaintiff's Section 1981 claim is denied.

II.     **NYSHRL**

---

18, 2020) ("In the context of retail shopping, courts have held that the "contracts" clause [of Section 1981]… applies"); *Turner v. Wong*, 363 N.J. Super. 186, 832 A.2d 340 (App. Div. 2003) ("[Section 1981] therefore applies to retail transactions as well as to formal contracts"); *see c.f., Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385 (S.D.N.Y. 2006), (stating that instances of discrimination arising in retail context which occur after the completion of the retail transaction are not covered under Section 1981), *aff'd sub nom. Bishop v. Toys R Us*, 385 F. App'x 38 (2d Cir. 2010).

Section 296 of the NYSHRL provides in pertinent part that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort, or amusement because of the race… of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . " New York State Executive Law § 296(2)(a). The term "public accommodation" includes "wholesale and retail stores and establishments dealing with goods or services of any kind." New York State Executive Law § 292.

Under Section 296 of the NYSHRL, an employer cannot be held liable for an employee's discriminatory act "unless the employer became a party to it by encouraging, condoning, or approving it." *Alexander v. Priv. Protective Servs., Inc.*, No. 119CV10004JPOSDA, 2021 WL 8445829, at *3 (S.D.N.Y. Nov. 24, 2021) ("The New York Court of Appeals has made clear that section 296 unambiguously separates the liability of an employee who discriminates from the liability of his employer; an employer 'cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it.'") (*citing Totem Taxi, Inc. v. New York State Hum. Rts. Appeal Bd.,* 65 N.Y.2d 300, 305 (1985)), *report and recommendation adopted*, No. 19-CV-10004 (JPO), 2022 WL 1567447 (S.D.N.Y. May 18, 2022); *Johnston v. Apple Inc.,* No. 11 CIV. 3321 JSR, 2011 WL 4916305, at *3 (S.D.N.Y. Oct. 14, 2011) (same). Absent plausible allegations that the employer encouraged, condoned, or approved the behavior at issue, this Court may not infer such facts to exist. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action").

Notably, Plaintiff's allegations instead suggest remedial measures may have been taken by Defendant based upon the "gist" of her conversation with a representative of Defendant following the incident. (Am. Compl. ¶ 23); *see Totem Taxi*, 65 N.Y.2d 300 (1985) (remedial measures taken by employer alleviated them from liability of employee's actions). Here, Plaintiff has alleged that she filed an "online complaint form for Citi Trends" detailing the incident, and followed up within twelve hours of submitting her original complaint. (Am. Compl. ¶ 20). Plaintiff also alleges having two separate conversions with Mr. Dargan concerning the incident, in the first of which Mr. Dargan assured Plaintiff he would follow up on her claims, and in the second of which Mr. Dargan informed her that store video footage "clearly confirmed her account of the incident." (Am. Compl. ¶¶ 20–22). Plaintiff states that the "gist of the conversation" gave her the impression that the offending employee had been terminated but makes no specific references to what would put her under such impression, or whether such action was taken by Defendant. (*Id.* ¶ 23). In any event, even if the employee was not terminated, Plaintiff fails to provide any allegations that Defendant encouraged, approved, or condone its employee's behavior towards Plaintiff.  Plaintiff has failed to plead facts sufficient to support her allegations against Defendant under NYSHRL.

The Court accordingly dismisses Plaintiff's NYSHRL cause of action, without prejudice. Defendant's motion to dismiss Plaintiff's NYSHRL claim is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. The Court DENIES Defendant's motion as to Plaintiff's Section 1981 claim, but GRANTS the motion as to Plaintiff's NYSHRL claim.  Plaintiff is granted leave to file a Second Amended Complaint as to her NYSHRL claim.  Plaintiff will have until March 10, 2023 to do so, consistent with this order.  Plaintiff is advised that the Second Amended Complaint will replace not supplement the Amended Complaint so any claims he wants to pursue must be included in or

8

attached to the Second Amended Complaint. Defendant is then directed to answer or otherwise respond by April 10, 2023.

If Plaintiff fails to file a Second Amended Complaint within the time allowed, and she cannot show good cause to excuse such failure, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice. If no Second Amended Complaint is timely filed, Defendant must answer the remaining claims against it on or before March 10, 2023.

The Clerk of Court is respectfully directed to terminate the motions at ECF No. 17.

Dated: February 8, 2023　　　　　　　　　　　　SO ORDERED:
　　　　White Plains, New York

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　United States District Judge